# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MAYA RANSOM-FREEMAN,     :
    :
      **Plaintiff,**     :     CIVIL ACTION
    :
      **v.**     :
    :
NANCY A. BERRYHILL,     :
      **Acting Commissioner of**     :     No. 16-cv-01315
      **Social Security,**     :
    :
      **Defendant.**     :

## MEMORANDUM OPINION AND ORDER REGARDING ATTORNEY'S FEES AND COSTS

### I.      Entitlement to Fees and Costs Under EAJA.

Maya Ransom-Freeman has filed a motion requesting attorney's fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), codified at 28 United States Code, Section 2412(d). Ms. Freeman filed an appeal of the denial of her claim for disability pursuant to 42 U.S.C. §§ 405(g), seeking review of the final decision of the Acting Commissioner of Social Security denying her application for Social Security Disability Insurance ("SSDIB") under Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 401 *et seq*. and 1381 *et seq*. On November 30, 2017, this Court filed a Memorandum Opinion remanding this case to the Administrative Law Judge ("ALJ") with instructions to review the case in light of this Court's findings.

My ruling included my finding that the ALJ failed to address significant evidence in the record that contradicted the evidence upon which the ALJ based his findings, and a finding that the ALJ mischaracterized portions of the record, and used those mischaracterizations to support his finding. Because of those errors, I was unable to conduct a meaningful review of the ALJ's opinion. I also found that these errors were

not harmless: there was significant evidence in the record of the "paragraph B" criteria, which may permit a reasonable factfinder to conclude that Freeman meets the requirements of Listing 12.04. Alternatively, I found that significant evidence in the record may permit a factfinder to determine that Freeman is disabled, at step five.

Plaintiff contends that these findings mean that she is the prevailing party in this matter, and allow her to collect attorney's fees and costs pursuant to EAJA. Plaintiff claims costs in the amount of $504.75, and a total of 84.1 hours of attorney time, at a rate of $168.62 per hour.

The Commissioner responds that no fees should be awarded pursuant to EAJA, because the government's position was "substantially justified." Dkt. No. 28, pp. 1-15. I disagree.

Plaintiff is entitled to "fees and other expenses . . . incurred by that party. . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." *Williams v. Astrue*, 600 F.3d 299, 301–02 (3d Cir. 2009) (quoting 28 U.S.C. § 2412(d)(1)(A)). "Substantially justified," under EAJA, means "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Id.* at 301-02 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). The government must demonstrate "(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory it propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced." *Id.* at 302 (quoting *Morgan v. Perry*, 142 F.3d 670, 684 (3d Cir. 1998) (citing *Hanover Potato Products, Inc. v. Shalala*, 989 F.2d 123, 128 (3d Cir. 1993)).

> The EAJA is not a "loser pays" statute. Thus, a court cannot assume that the government's position was not substantially justified simply because the government lost on the merits. "[T]he inquiry into reasonableness for EAJA purposes may not be collapsed into [the] antecedent evaluation of the merits, for EAJA sets forth a distinct legal standard." *Cooper v. United States Railroad Retirement Board,* 24 F.3d 1414, 1416 (D.C.Cir.1994).

*Morgan*, 142 F.3d at 685.

In *Williams,* the court of appeals upheld the district court's denial of attorney's fees, where the basis of remand was a single "inconsequential" legal error that would likely be remedied on remand without changing the ultimate outcome. *Williams,* 600 F.3d at 302. By contrast, in this case the ALJ's opinion was "riddled with errors." *Xayaseng v. Barnhart*, 2006 WL 891177, at *1 (E.D.Pa. 2006) (rejecting the argument that the Commissioner's position was substantially justified). It seems unlikely that, properly considered, this case would result in a denial of benefits. Perhaps the best indicator of whether the Commissioner's position is substantially justified is the decision and rationale on the merits. *See Bryan v. Commissioner of Social Sec.*, 478 Fed.Appx. 747, 750, 2012 WL 1354517, at *2 (3d Cir. 2012) ("The most powerful indicator of the reasonableness of an ultimately rejected position is a decision on the merits and the rationale which supports that decision.") (quoting *Friends of the Boundary Waters Wilderness v. Thomas,* 53 F.3d 881, 885 (8th Cir.1995)).

As my Memorandum explains in detail, the ALJ made numerous, serious, prejudicial errors in a case where the evidence appears to warrant a finding that plaintiff meets a listing. This was not a case where the legal standards were unclear or rarely encountered, or the adverse evidence slender or murky. This was a case where the ALJ arrived at a result without complying with well-known legal standards and without

considering substantial, often overwhelming evidence contradicting his conclusions.

The Commissioner's position fails to satisfy all three elements identified in *Williams:*

"(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the

theory it propounded; and (3) a reasonable connection between the facts alleged and the

legal theory advanced." *Williams,* 600 F.3d at 302. The errors culminated in an entirely

unsatisfactory hearing.[1] Some of the other errors identified in the Memorandum

include:

- failing to consider the Claimant's actual history with medications (Dkt. No. 22 at p. 37)
- failing to determine if medication actually controlled Claimant's symptoms (*Id.* at 37)
- failing to determine whether "good reasons" justified Claimant's periodic medication lapses (*Id.* at 37)
- failing to deal with substantial evidence that Freeman meets 3 of the 4 "B" criteria under Listing § 12.04(B) (1), (2) and (3) (*Id.* at 47)
- "cherry-picking" GAF scores and insisting that good GAF scores were attained without psychiatric treatment (*Id.* at 49-50)
- Concluding that Freeman is non-compliant with treatment without considering other explanations, as required in the Social Security Administration's regulations (*Id.* at 50-51)

In light of these fundamental failures, the Commissioner's position was not

substantially justified. The Commissioner repeatedly relies upon the Third Circuit's

opinion in *Johnson v. Comm'r. of Soc. Sec.*, 529 F.3d 198, 203-04 (3d Cir. 2008) for the

---

[1] As I stated in my Memorandum,

> This was a brief hearing involving desultory questioning of an unrepresented eighteen year old with well-documented mental disorders. Left mostly untouched was the significant evidence of the Claimant's mental disorders. The inadequacies of the hearing were not remedied by the ALJ's review of the documentary record, as reflected in his opinion. In sum, this was not a full and fair proceeding. The Claimant certainly did nothing to help herself, but neither did the ALJ, who had an "affirmative obligation to assist the claimant in developing the facts." *Ventura*, 55 F.3d at 904, quoting *Hummel v. Heckler*, 736 F.2d 91, 95 (3d Cir. 1984). Dkt. No. 22, pp. 54-55.

proposition that their position was substantially justified because an ALJ is not required to discuss every piece of evidence in the record. Dkt. No. 28, pp. 6, 12. True enough, but where the ALJ wholesale ignores evidence that contradicts his findings, and those findings themselves are based, at least in part, on a mischaracterization of the evidence upon which the ALJ does rely, the Commissioner cannot merely parse snippets of the record in an effort to stand up an unsupported decision. The legal requirements that the ALJ base his or her decision on substantial evidence (not mischaracterizations of evidence), consider contradictory evidence, and do both in such a way that a court can exercise meaningful review, are basic and well known. This Court's Memorandum described the opinion's shortcomings in detail:

> Two findings undergird the ALJ's opinion: that Freeman failed to attend psychotherapy and willfully failed to comply with her medication regime. The ALJ made the following conclusory statement just prior to concluding that his RFC assessment is supported by medical evidence, and therefore Claimant is capable of performing "at least unskilled work." Doc. No. 7-3, at p. 11.

> > I find the claimant to have an immature behavior. She is non-complaint (sic) with a treatment regimen that would control her mental impairments. She refuses to take medication and she is currently in no psychotherapy program. I further note that the claimant is able to take care of her personal needs without assistance. She can perform household chores, she can watch television and use a computer, and she can perform errands outside the home. These factors are all indications that the claimant is capable of at least unskilled work.

> *Id*. These conclusory statements are not supported by the record.

> Although the ALJ's decision suggests that Freeman would be fine if she took medication ("She admitted that she is not in treatment or taking any medication for her mental impairments" . . . "she is noncompliant with a treatment regimen that would control her mental impairments"), there is little medical evidence in the record to demonstrate that Freeman's condition would improve with medication. The ALJ does not cite to any. The ALJ also ignores substantial evidence that Freeman experienced severe side effects from medication, including additional mood disorders and weight gain. The ALJ failed

to engage in the required analysis of medication and treatment lapses that is required under 20 C.F.R. § 1530, discussed infra, at p. 34. The ALJ's conclusion is, therefore, a legally unsupported inference.

\*\*\*

Records of ERA show that Freeman was treated continuously at their facility beginning at least in 2008. There is no indication that the retirement of one therapist and the lack of an appointment with the new therapist (to whom she was introduced), translates into, "she is not in treatment." Doc. No. 7-8, at p. 21, Doc. No. 7-3, at pp. 26-27.

The record is unambiguous – Freeman has been in psychotherapy since at least the age of 14, and she was still in a psychotherapy program at the time of the hearing. The ALJ's finding that "she is currently in no psychotherapy program," was plain error.

With regard to medication, the record is again replete with evidence that Freeman has, through the years, been placed on a variety of psychotropic medications, several with disastrous effect. (Bullet point listing omitted).

\*\*\*

The crux of the ALJ's opinion is that Claimant is willfully non-compliant with therapy and medications that would control her mental impairment. Doc. No. 7-3, at p. 11. He specifically stated that Claimant "refuses to take medication and she is currently in no psychotherapy program." Id. As for psychotherapy, the statement is flat wrong. As for the failure to take prescribed medication, the ALJ did not apply the correct legal standard or conduct the proper analysis.

\*\*\*

The ALJ did not inquire whether Freeman's purported failure to take medication was excused by "good reasons." No physician addressed the point. There is substantial evidence that Freeman's bi-polar disorder and its attendant poor judgment, as well as her concerns (and her mother's concerns) about serious side effects, had much to do with episodes of non-compliance in the record. The record points to concerns about a number of common side-effects, including additional mood disorders, tremors, and severe weight gain.

Until recently, Claimant was a minor, and her mother was both her caregiver and her source of financial support. Claimant's mother has stated she ensured that Claimant took her medication, and noted the side effects of the medication. Those statements are not gainsaid by medical opinion or other

6

evidence. Yet the ALJ never addressed Claimant's mother's function report, and refused to allow the mother to appear at the hearing by telephone to testify. (See section B., p. 52, below). The ALJ's failure to consider any of the "good reasons" for non-compliance suggested by the evidence in the record convinces me that the ALJ considered nothing but willful noncompliance as the reason for Claimant's failure to take medication for her mental impairments. This was error. 20 C.F.R. § 404.1530(b), SSR 16-3p; *see Gleason*, 152 F.Supp.3d at 391. Nor was the error harmless. Non-compliance with medication was a crucial component of the ALJ's reasoning.

The ALJ erred by finding that the Claimant did not participate in psychotherapy, by failing to consider the Claimant's actual history with medications, by failing to determine if medication actually controlled Claimant's symptoms, and by failing to determine whether "good reasons" justified Claimant's periodic medication lapses. These errors were not harmless. These errors form the backdrop of additional errors, discussed below.

Dkt. No. 22, pp. 29-37. (Footnotes and citations omitted).

Equally unpersuasive is the Commissioner's argument that she was substantially justified in defending the ALJ's decision which relied in part on a mischaracterization of Plaintiff's GAF scores. Dkt. No. 28 p. 12. As this Court's Memorandum stated:

Here, the ALJ mentions Freeman's GAF scores in only one sentence of his decision: "[e]ven with non-treatment, the claimant had GAF scores in the range of 55 to 65. These scores are indicative of an individual with only mild to moderate symptoms." Doc. No 7-3, at p. 11. There is no record cite indicating where the ALJ found these two particular scores. There are two problems with this passage. First, the ALJ completely discounted, without discussion or explanation, scores much lower than 55. *See* Doc. No. 7-8, at p. 20 (GAF score of 45 on March 26, 2009); Doc. No. 7-9, at p. 32 (GAF score of 10 upon admission to MCES on September 19, 2012); Doc. No. 7-9, at p. 81 (GAF score of 50 *upon discharge* from Brooke Glen on January 13, 2009). Second, The ALJ concludes that Freeman attained scores of 55 to 65 "with non-treatment." As discussed above, however, Freeman has not been without treatment since the third grade.

Dkt. No. 22, pp. 49-50.

The Commissioner's reliance on the ALJ's selection and discussion of highly selective, and occasionally mischaracterized or misstated evidence, was not substantially justified. As I stated in the Memorandum:

I agree that the ALJ failed to articulate his reasons for rejecting significant medical evidence in the record that contradicts his findings, but I think the ALJ did, in fact, specify what evidence he relied upon. The problem is, that "evidence," or more accurately, the conclusions the ALJ reached from selected evidence, are not supported by the record as a whole. The ALJ's conclusions that Freeman is non-compliant with treatment, that she attains GAF scores "in the range of 55 to 65" without treatment, that she is able to take care of her personal needs without assistance, and can perform chores and errands, were all part of his ultimate conclusion that "the claimant is capable of at least unskilled work." Doc. No. 7-3, at p. 11. Those conclusions in turn were based upon a limited discussion of Freeman's medical records, including: (1) her admission to Brooke Glen Hospital in 2009; (2) a single notation from ERA on March 8, 2012; (3) a single notation from Dr. Chambers on August 4, 2012; and (4) her involuntary commitment to MCES on September 19, 2012. Yet there is substantial evidence in the record that refutes each of these conclusions, and none of that evidence was ever addressed by the ALJ. That evidence includes both objective medical evidence that contradict the ALJ's conclusions, as well the non-medical evidence provided by the School District of Philadelphia and Freeman's mother, none of which was discussed or even mentioned in the decision. *See, e.g.* Doc. No. 7-8, at pp. 32-33, (School District of Philadelphia Reevaluation Report, documenting instances of violence including slamming a door so hard it broke the lock, running away from school and onto the railroad tracks, where she was seen throwing rocks at cars, hurting a teacher, and bringing a weapon to school).

I agree that an ALJ is not restricted in how he structures his discussion of the evidence, or in the language he chooses to use. I disagree, however, that the ALJ "reasonably assessed" Freeman's ability to care for herself and function in society, such that she could, in fact, undertake employment, in which she would be required to interact, at least some of the time, with other human beings.

\*\*\*

The problem here is not in the ALJ's selection of language. It is his failure to address at all significant evidence in the record that directly contradicts his findings. Like the court in *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir.2001), I am "handicapped by the fact that the ALJ has (1) failed to evaluate adequately all relevant evidence and to explain the basis of his conclusions and (2) failed to explain his assessment of the credibility of, and weight given to, the medical evidence" from Freeman's treating physicians that "contradict the ALJ's finding" that Freeman can perform light work. *Id*.

*Id*. at pp. 50-51 (Footnotes omitted).

I also do not agree that the Commissioner's defense of the ALJ's evaluation of

Listing 12.04 at Step Three, the issue upon which this case was ultimately remanded,

was reasonable. The ALJ found that Freeman did not meet any of the "B" criteria of Listing 12.04 because she had only "mild" restriction in activities of daily living, because "the claimant can take care of her own personal needs without assistance. The claimant can shop and do errands without assistance." ALJ's Decision, Doc. No. 7-3, at p. 8. He also found that Freeman had only moderate difficulties with social functioning. *Id*. He based these findings on the fact that she "has only one friend and does not get along with others," but "[s]he is improving in her ability to interact with others." *Id*. He found moderate difficulties with concentration, persistence and pace based upon Freeman's ability to watch a television show in its entirety, and her ability to "use a computer and smart phone." *Id*. This finding was not substantially supported by the record as a whole. As stated in the Memorandum:

> The ALJ never mentioned the fact that the record shows that Freeman was moved almost every year during secondary school, usually after multiple disciplinary infractions; has been expelled from two colleges, and fired from the only three jobs she ever attempted. Nor did he address the repeated, disturbing, accounts of violent actions reported in the record, including throwing chairs and other objects at teachers, fellow students, and co-workers, and cutting herself. As discussed below, I find that the ALJ's conclusion, that Listing § 12.04 (Affective Disorders) does not apply, is not supported by substantial evidence, because the ALJ failed to consider and account for significant evidence that the Listing does apply.

Dkt. No. 22, p. 38.

This leaves only the Commissioner's argument that she was substantially justified in maintaining that Plaintiff was not prejudiced by her lack of representation, which she voluntarily waived. Plaintiff conceded in her reply brief that she voluntarily waived her right to counsel, however, she maintained that she was prejudiced by the ALJ's failure to provide her with a fair proceeding – soliciting testimony from Plaintiff, an 18 year old with well-documented, chronic, mental disorders—and denying her the opportunity to

9

call a single witness, her caregiver for her entire life. I agreed with Plaintiff's position,

and, as noted in the Commissioner's responsive pleading regarding the fee award, *see*

Dkt. No. 28 at p. 13, cited to the "offensive conduct" finding in *Ventura v. Shalala*, 55

F.3d 900, 902 (3d Cir. 1995). My concern with the conduct of the hearing did not end

with this comment, however:

> Freeman's testimony at the hearing, fairly construed, indicated that her mother intended to be present and testify, which became impossible when Alisa Freeman found herself unable to leave the office because she was there alone. *See* Doc. No. 7-3, at pp. 20-21. Allowing Alisa Freeman to testify by telephone would have been a reasonable accommodation, given all of the circumstances.[2]

> The failure to provide a fair proceeding extends also to the failure to apprehend the significance, or even the existence, of a substantial body of evidence that demonstrated Claimant's bipolar and personality disorders. The most obvious example is the ALJ's dismissal of Claimant's well-documented social functioning issues with the statement, "[w]ell, you're going to have to stop fighting, you know? . . . It seems to find you a lot." R. 163. The comments ignore the glaring issue of causation: if Claimant's history of fighting was due to her mental disorders, the history is powerful evidence of a potentially disabling condition, compensable under the Social Security Act, rather than evidence of a lack of maturity. While this causation issue was obviously settled in the ALJ's mind, it is not at all settled in the record.

> The ALJ failed to ask a single follow-up question concerning Freeman's three short-lived jobs, (*id*. at p. 23); her dismissal from the school she was attending just weeks before the hearing, (*id*. at p. 22); her grandmother's recent death and how that changed her living situation, (*id*. at p. 23); why she believed she cannot take care of herself (to which she responded only that her mother must assist her with her doctor appointments), (*id*. at p. 24); or her statement that she has no friends, (*id*. at p. 29). The ALJ asked no questions about Freeman's hospitalizations or her numerous documented violent episodes (other than his suggestion that she simply "stop fighting"). All this suggests a lack of familiarity with what the record revealed.

> This was a brief hearing involving desultory questioning of an unrepresented eighteen year old with well-documented mental disorders. Left mostly untouched was the significant evidence of the Claimant's mental disorders. The inadequacies of the hearing were not remedied by the ALJ's review

---

[2] I also agree with Claimant that, given the ALJ's refusal to allow Alisa Freeman to testify via telephone, his failure to assess or even mention her Third Party Function Report is especially troubling.

of the documentary record, as reflected in his opinion. In sum, this was not a full and fair proceeding. The Claimant certainly did nothing to help herself, but neither did the ALJ, who had an "affirmative obligation to assist the claimant in developing the facts." *Ventura*, 55 F.3d at 904, quoting *Hummel v. Heckler*, 736 F.2d 91, 95 (3d Cir. 1984).

I find that the Plaintiff is entitled to attorney's fees and costs under EAJA, as the Commissioner's position was not substantially justified.

## II.     Amount of Fee Award.

The Commissioner has not challenged the request of costs in the amount of $504.75, and costs will be awarded in the full amount. The Commissioner argues, however, that the requested attorney's fees of $14,180.94, representing 84.1 hours of time at a rate of $168.62 per hour, is excessive. I agree.

I order attorney's fees be paid in the amount of $7,398.02, representing 43.9 hours at a rate of $168.62.[3] I will exclude the following entries:

| | | |
|---|---|---|
| 2/20/16 | Discussion of action, arrange meeting | .7 |
| 2/29/16 | Draft Retainer | 1.0 |
| 3/18/16 | Draft factual arguments/emails | 2.0 |
| 3/19/16 | Draft complaint-phone calls/emails w/Alisa F. | 1.5 |
| 3/22/16 | Finalize complaint, arrange for filing | .5 |
| 4/13/16 | Emails to Alisa Freeman re: complaint, etc. | .2 |
| 4/22/16 | Draft retainer agreement/review w/client | 1.0 |
| 5/3/16 | Call to Warfield re service of complaint | .3 |
| 7/26/16 | Calls with Clerk of Court | .5 |
| 8/12/16 | Call w/Lynch re: extension | .3 |

---

[3] The Commissioner does not challenge Plaintiff's requested hourly rate of $168.62, and I agree that it is reasonable .

| | | |
|---|---|---|
| 8/12/16 | Draft motion for extension | .5 |
| 9/3/16 | Review administrative records | 3.5 |
| 9/7/16 | Review order granting extension | .4 |
| 9/22/16 | Contact Mom re: missing docs | 1.5 |
| 9/22/16 | Edit and finalize memo | 2.0 |
| 10/13/16 | Def's request to extend time | .3 |
| 11/7/16 | Call from re: approval of 2nd app. For SSI | .5 |
| 11/8/16 | Research Judicial Notice | 1.5 |
| 11/11/16 | Work w/ Mom to draft affidavit | 1.0 |
| 11/18/16 | Draft memo re: judicial notice, edit affidavit | 2.0 |
| 11/27/16 | Edit and finalize memo | 1.0 |
| 3/1/18 | Finalize fee petition and related docs | 2.0 |
| TOTAL | | 24.2 |

The above-listed entries are charges for administrative tasks, are excessive for the tasks performed, are for matters not to be paid by SSA, or are for matters not related to the subject litigation.

In addition, I will reduce the time for the following entries by the amounts listed at right. These entries are excessive:

| | | |
|---|---|---|
| 9/1/ - 9/19/16 | Drafting motion and memo (total 18.5 hours) | 8.5 |
| 12/3 - 12/8/16 | Drafting reply brief (total 7 hours) | 2.0 |
| 11/30/17 | Review Court's Memorandum Order (total 2 hours) | 1.0 |
| 2/16 – 2/26/18 | Research EAJA (total 6.5 hours) | 4.5 |
| TOTAL | | 16.0 |

Subtracting these amounts from Plaintiff's 84.1 hours leaves a total of 43.9 hours, which, when multiplied by the rate of $168.52, results in fees of $7,398.02. The attorney's fee award will be limited to this amount.

It is therefore **ORDERED**, this 30th day of April, 2018, that, pursuant to 28 U.S.C. § 2412(d)(1)(A), the Commissioner shall promptly pay Plaintiff's attorney's fees and costs in the total amount of $7,902.77, representing $7,398.02 in fees and 504.75 in costs.

BY THE COURT:

s/Richard A. Lloret

HON. RICHARD A. LLORET
U.S. Magistrate Judge